## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2017, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bart M. Betteau
Betteau Law Office, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darius T. Sutton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 10, 2017<br><br>Court of Appeals Case No.<br>31A01-1603-CR-618<br><br>Appeal from the Harrison Superior Court<br><br>The Honorable Joseph L. Claypool, Judge<br><br>Trial Court Cause No.<br>31D01-1602-F3-90 |

**Bradford, Judge.**

# Case Summary

On February 16, 2016, Appellant-Defendant Darius T. Sutton was charged with Level 3 felony rape and Level 6 felony sexual misconduct with a minor. The trial court conducted an initial hearing on February 17, 2016. At the conclusion of this hearing, the trial court set Sutton's bail at $10,000. The trial court denied Sutton's subsequent request for a reduction of the bail amount.

On appeal, Sutton contends that the $10,000 bail set by the trial court was excessive and that the trial court erred in denying his request for a reduction of the bail amount. Concluding otherwise, we affirm.

# Facts and Procedural History

On February 16, 2016, Sutton was charged with Level 3 felony rape and Level 6 felony sexual misconduct with a minor. The affidavit for probable cause which was filed in connection to these charges indicated the following:

> On Tuesday, February 2, 2016, fifteen (15) year old G.F. … disclosed in a forensic interview conducted at the Comfort House that her eighteen (18) year old cousin, [Sutton,] tried to have sex with her on Friday November 27, 2015, while they were staying the night at their grandparents' home[.]
>
> G.F. stated that on November 27, 2015, she woke up with [Sutton] on top of her. G.F. stated that [Sutton] had unbuttoned her shirt and had pulled off her shorts and underwear. [Sutton] started trying to kiss her and was touching her bare breast. G.F. stated that [Sutton] inserted his fingers into her vagina. G.F. described that [Sutton] was trying to put his penis in her vagina.

She said she was able to feel his penis touching her vagina but it never penetrated inside. At one point G.F. stated that [Sutton] grabbed her hand and tried to force her to touch his penis but she pulled her hand back.

G.F. stated that she kept telling [Sutton], "No, no I don't want to do this, I want this to stop" and was trying to push him away but she was unable to get out from under him. G.F. stated that while this was going on she was crying.

Appellant's App. Vol. II, p. 7.

[4] Also on February 16, 2016, the trial court issued a "Finding of Probable Cause for Issuance of Warrant for Arrest" in which it found that there was probable cause to believe that the Indiana Criminal Code had been violated and that a warrant for Sutton's arrest should be issued. This order also indicated that upon arrest, Sutton should be held with "no bond." Appellant's App. Vol. II, p. 8. The arrest warrant issued later that day also indicated that Sutton should be held without bond and that he should "thereafter without unnecessary delay" be brought before the trial court. Appellant's App. Vol. II, p. 9.

[5] Sutton was arrested either on the evening of February 16, 2016 or on the morning of February 17, 2016. He was soon thereafter brought before the trial court for an initial hearing which began at 9:58 a.m. on February 17, 2016. During this initial hearing, Sutton argued that his bail should be set at zero and that he should be immediately released on his own recognizance, claiming that he would be unable to post bail in any amount. The trial court decided otherwise and set Sutton's bail at $10,000, "full cash." Initial Hr. Tr. p. 17.

The trial court noted that this amount was a standard bail for a Level 3 felony. The trial court also ordered that an Indiana Risk Assessment System ("IRAS") risk assessment should be completed to determine the risk that Sutton would commit another offense. The trial court further ordered that the matter be scheduled "for an immediate hearing after [the IRAS was completed] to determine a reduction of [bail] at that time." Initial Hr. Tr. p. 15.

[6]     Later that afternoon, at Sutton's counsel's request, the trial court conducted a bail reduction hearing after the IRAS risk assessment was completed. During this hearing, the trial court noted that the IRAS risk assessment found that Sutton was a "Low" risk to re-offend. Appellant's App. Supp. App. Vol. I, p. 6. The trial court expressed that the bail reduction hearing may be being held "too quick[ly]." Bond. Hr. Tr. p. 3. The trial court further indicated the following:

> Okay. In the event of this I've done some research on it on my own in regard to the bond and also done some soul searching on what I can do in regard to this matter and of the bond reduction. You know, at this point, even with the Risk Assessment I need some more information about, about the defendant prior to releasing him out on his own recognizance or lowering the [bail] from $10,000 full cash. Things such as his, you know, his high school record, you know, things, you know, going you know, I, I, I need something to show that he's not gonna be a risk to the community in going -- This is a very serious felony. It's one with his – involved a maybe a distant family member but a family member. And I feel very uncomfortable in, in lowering the bond in this matter at this point. I understand he is still in high school.… And I just have a real difficult time in having you go back to that at this point[.] … The seriousness of the crime itself in, in my mind, at this point, does make you – even though you haven't had any, what's been testified this morning, have any

prior criminal record, there's, there's an issue that you may be a flight risk at this point too. So I need some more information before I can do this. I'm going to do some, some studying on my own in regard to this matter.

Bond Hr. Tr. pp. 6-8. The trial court indicated that it would not, at that time, reduce the bail, but indicated that it "may call this again Sua Sponte once it ha[d] more information in regard to the defendant and the situation with the schools and things of this nature." Bond Hr. Tr. p. 8. The next day, Sutton signed the conditions of his release and his mother posted the $10,000 cash bond to secure his release.

# Discussion and Decision

[7] As an initial matter, we note that Sutton contends that the trial court abused its discretion in ordering in its finding of probable cause and arrest warrant that Sutton should be held "without bond." We need not decide the merits of Sutton's argument in this regard as we conclude that the issue is now moot. The record reveals that Sutton was held "without bond" for less than twenty-four hours before his bail was set at $10,000. Sutton did not take the steps necessary to file an interlocutory appeal in those few hours between when he was arrested and his bail was set. Thus, to the extent that the order finding probable cause and the arrest warrant constituted preliminary orders relating to Sutton's bail, these orders are no longer in effect. As such, the propriety of these orders is not properly before this court in the instant appeal.

[8] Sutton also contends that the trial court erred in denying his request for a bail reduction. Specifically, Sutton argues that the $10,000 bail was excessive and beyond the amount necessary to ensure his appearance at future proceedings. In making this argument, Sutton claims that the circumstances indicate that his bail should have been set at zero and that he should have been released on his own recognizance. We disagree.

[9] "[T]he setting of the amount of bail is within the discretion of the trial court and will be reversed only for an abuse of that discretion." *Lopez v. State*, 985 N.E.2d 358, 360 (Ind. Ct. App. 2013) (citing *Winn v. State*, 973 N.E.2d 653, 655 (Ind. Ct. App. 2012)). "We therefore review the trial court's denial of a defendant's motion to reduce bail for an abuse of discretion." *Id.* (citing *Winn*, 973 N.E.2d at 655). "'An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.'" *Id.* (quoting *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011)).

[10] "The Indiana Constitution prohibits excessive bail." *Id.* (citing Ind. Const. art. 1, § 16). With respect to bail, Indiana Code section 35-33-8-4(b) provides as follows:

> Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community. In setting and accepting an amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

## I. Initial Order Setting Sutton's Bail at $10,000

[11]    The trial court set Sutton's bail at $10,000 during Sutton's initial hearing on February 17, 2016. In setting Sutton's bail at $10,000, the trial court noted that $10,000 is the local standard amount imposed for a Level 3 felony. The trial court also noted the seriousness of the offenses with which Sutton was charged.

The trial court, however, acknowledged Sutton's claimed lack of resources and indicated that it would consider a reduction of the bail amount after it received more information about Sutton's circumstances. Given the serious nature of Sutton's offense, we cannot say that the standard $10,000 bail amount was excessive. As such, we conclude that the trial court did not abuse its discretion in this regard.

## II. Denial of Sutton's Request to Reduce Bail

[12] Later on February 17, 2016, the trial court, at Sutton's request, conducted a hearing during which it considered Sutton's request for a reduction of his bail amount. During this hearing, the trial court noted that the IRAS risk assessment found that Sutton was a "Low" risk to re-offend. Appellant's App. Supp. App. Vol. I, p. 6. The trial court also again acknowledged Sutton's claimed lack of resources. The trial court, however, further noted concerns regarding whether Sutton might represent a flight risk. In addition, given the fact that Sutton was alleged to have committed the charged offenses against a young family member, the trial court indicated that it was not comfortable reducing the amount of Sutton's bail until it obtained additional information relating to Sutton's school and family circumstances. The trial court again indicated that it would consider a reduction of Sutton's bail once it had had the opportunity to review the additional information. However, before the trial court received this additional information, Sutton's mother posted the $10,000 cash bond to secure his release.

[13] Given the nature of the charged offenses, it seems reasonable that the trial court would seek more information regarding Sutton's family and school circumstances before reducing Sutton's bail or releasing Sutton on his own recognizance. Sutton was charged with Level 3 felony rape and Level 6 felony sexual misconduct with a minor stemming from an incident involving his younger cousin. It seems completely appropriate that the trial court would seek additional information regarding Sutton's family and school circumstances to determine whether Sutton, who at the time was still in high school, would be welcome at school pending trial or whether Sutton might constitute a flight risk. The reasonableness of the trial court's request for additional information is highlighted by its stated willingness to re-consider its order once it received additional information relating to Sutton's circumstances. Again, given the serious nature of Sutton's alleged crimes, we cannot say that the trial court's denial of Sutton's request for a bail reduction was clearly against the logic and effect of the facts and circumstances before it. As such, we conclude that the trial court did not abuse its discretion in this regard.

[14] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.